UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL ISCENKO,

                                             Plaintiff,

                    - against -

THE CITY OF NEW YORK and NELDRA
ZEIGLER,

                                             Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

# ZACHARY W. CARTER
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-146
New York, New York  10007-2601

*Of Counsel:* Michael Nacchio
*Tel.* (212) 356-0839
mnacchio@law.nyc.gov
*Matter No.* 2016-032528

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 3

ARGUMENT

    POINT I

           PLANITIFF'S DISCRIMINATION CLAIMS FAIL
           AS A MATTER OF LAW ........................................................................... 6

           A.  No Plausible Claim Of Race Discrimination
               Under Title VII and the SHRL .......................................................... 7

           B.  No Plausible Claim of Race Discrimination
               Under the CHRL ................................................................................ 12

    POINT II

           ALL CLAIMS AGAISNT DEFENDANT
           NELDRA ZEIGLER SHOULD BE DISMISSED ................................... 14

    POINT III

           PLAINTIFF FAILS TO STATE A CLAIM
           UNDER 42 U.S.C. § 1983 ........................................................................ 15

           A.  No Monell Policy ............................................................................... 15

           B.  Qualified Immunity .......................................................................... 17

CONCLUSION .............................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

Anderson v. Creighton,
   483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).......................................................18

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...............................................................................................6, 7, 9

Attard v. Board of Education,
   No. O5-CV-2129, 2010 U.S. Dist. LEXIS 104802 (E.D.N.Y. 2010),
   aff'd, 451 Fed. App'x 21 (2d Cir. 2011)..................................................................12

Back v. Hastings on Hudson Union Free Sch. Dist.,
   365 F.3d 107 (2d Cir. 2004)....................................................................................15

Bell Atl. Corp v. Twombly,
   550 U.S. 544 (2007)..............................................................................................6, 7

Burkybile v. Bd. Of Educ.,
   411 F.3d 306 (2nd Cir. 2005)..................................................................................10

Chambers v. Time Warner, Inc.,
   282 F.3d 147 (2d Cir. 2002)......................................................................................3

Chin v. N.Y.C. Hous. Auth.,
   106 A.D.3d 443, 965 N.Y.S.2d 42 (1st Dep't 2013),
   lv. denied, 22 N.Y.3d 861 (2014) ...........................................................................12

Ciambriello v. County of Nassau,
   292 F.3d 307 (2d Cir. 2002)......................................................................................7

City of Canton v. Harris,
   489 U.S. 378 (1989)................................................................................................15

Clark County Sch. Dist. v. Breeden,
   532 U.S. 268 (2001)..................................................................................................8

Collins v. Stasiuk,
   56 F. Supp. 2d 344 (S.D.N.Y. 1999)................................................................16, 17

Cunningham v. Consol. Edison, Inc.,
   2006 U.S. Dist. LEXIS 22482 (E.D.N.Y. Mar. 28, 2006)......................................8

Davis v. City of New York,
   No. 86-CV-6345, 1990 U.S. Dist. LEXIS 14006 (S.D.N.Y. Oct. 22, 1990)..........17

**Cases**                                                                            **Pages**

Dwares v. City of New York,
   985 F.2d 94 (2d Cir. 1993)................................................................16

Feingold v. New York,
   366 F.3d 138 (2d Cir. 2004)............................................................14

Grieve v. Tamerin,
   269 F.3d 149 (2d Cir. 2001)............................................................10

Harlow v. Fitzgerald,
   457 U.S. 800 (1982)........................................................................17

Harrington v. County of Suffolk,
   607 F.3d 31 (2d Cir. 2010)..............................................................18

Hedges v. Town of Madison,
   456 Fed. Appx. 22 (2d Cir. 2012).....................................................7

Hunter v. Bryant,
   502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)................18

Hussein v. Hotel Employees & Restaurant Union, Local 6,
   108 F. Supp. 2d 360 (S.D.N.Y. 2000)................................................8

Johnson v. Andy Frain Servs.,
   638 Fed. Appx. 68 (2d Cir. 2016)....................................................12

Kato v. Ishihara,
   239 F. Supp. 2d 359 (S.D.N.Y. 2002),
   aff'd, 360 F.3d 106 (2d Cir. 2004)..................................................14

Kaur v. New York City Health & Hosps. Corp.,
   No. 07-CV-6175, 2010 U.S. Dist. LEXIS 15455 (S.D.N.Y. Feb. 19, 2010)...........................13

Lifranc v. N.Y. City Dep't of Educ.,
   No. 07-CV-1109, 2010 U.S. Dist. LEXIS 34009 (E.D.N.Y. Apr. 6, 2010) ............................9

Littlejohn v. City of New York,
   795 F.3d 297 (2d Cir. 2015)..............................................................6

Malik v. Carrier Corp.,
   202 F.3d 97 (2d Cir. 2000)..............................................................18

Malley v. Briggs,
   475 U.S. 335 (1986)........................................................................17

| Cases | Pages |
|---|---|

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)............................................................6, 15

McMillian v. Monroe Co.,
    520 U.S. 781 (1997)...............................................................16

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
    715 F.3d 102 (2d Cir. 2013)............................................... 11-12

Mitchell v. Forsyth,
    472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)......................18

Monell v. Department of Social Services,
    436 U.S. 658 (1978)........................................................... 15-16

Norville v. Staten Island Univ. Hosp.,
    196 F.3d 89 (2d Cir. 1999)........................................................8

Oklahoma v. Tuttle,
    471 U.S. 808 (1985)...............................................................16

Pearson v. Callahan,
    555 U.S. 223 (2009)............................................................17, 18

Ponticelli v. Zurich American Ins. Group,
    16 F. Supp. 2d 414 (S.D.N.Y. 1998).............................................8

Ruiz v. County of Rockland,
    609 F.3d 486 (2d Cir. 2010).................................................. 7-8

Saucier v. Katz,
    533 U.S. 194 (2001)...............................................................17

Smith v. City of New York,
    130 F. Supp. 3d 819, 827 (S.D.N.Y. 2015),
    aff'd, No. 15-3059, 2016 U.S. App. LEXIS 19767 (2nd Cir. Nov. 3, 2016)....................10, 11

St. Louis v. Praprotnik,
    485 U.S. 112 (1988)...............................................................17

Stern v. Trustees off Columbia Univ.,
    131 F.3d 305 (2d Cir. 1997)......................................................9

TechnoMarine SA v. Giftports, Inc.,
    758 F.3d 493 (2d Cir. 2014).....................................................10

**Cases**                                                                                              **Pages**

Tomassi v. Insignia Fin. Group, Inc.,
    478 F.3d 111 (2d Cir. 2007)........................................................................................9

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995)....................................................................................14

University of Tennessee v. Elliot,
    478 U.S. 788 (1986)................................................................................................10

Villante v. Department of Corrections,
    786 F.2d 516 (2d Cir. 1986)....................................................................................16

Williams v. New York City Hous. Auth.,
    61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) ..................................................12

Wilson v. N.Y.P. Holdings, Inc.,
    No. 05-CV-10355, 2009 U.S. Dist. LEXIS 28876 (S.D.N.Y. Mar. 31, 2009) ........12

**Statutes**

42 U.S.C. § 1983 .....................................................................................2, 7, 15, 16, 17, 18

42 U.S.C. §§ 2000e *et seq.* ........................................................................................... 1-2

N.Y.C. Admin. Code §§ 8-101 *et seq.* ................................................................................2

N.Y.C. Administrative Code § 8-130 ................................................................................12

N.Y. Executive Law §§ 290 *et seq.* ...................................................................................2

N.Y. Penal Code § 130.55 ...................................................................................................1

Rule 12(b)(6).............................................................................................................6, 10, 12

Rule 15 .................................................................................................................................3

Rule 15(a)(2) .......................................................................................................................3

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff is a former sergeant employed by the City of New York ("City") in the City's Police Department ("NYPD"). He was terminated on September 25, 2015, after he was found guilty at a departmental trial of charges that he threw his semen onto the body and clothing of NYPD Police Administrative Aide Marilyn Montijo, on January 23, 2015, and for lying to investigators in his explanation of the incident. Surveillance footage from Police Headquarters was presented at the trial which captured plaintiff throwing a substance upon Ms. Montijo from behind. Plaintiff was charged and had a disciplinary hearing presided over by NYPD Assistant Deputy Commissioner of Trials Rosemarie Maldonado (ADCT Maldonado). In a report, dated September 25, 2015, plaintiff was found guilty of all charges and termination recommended. The Police Commissioner adopted the report and imposed the recommended penalty of termination. Separately, on September 3, 2015, a New York County Grand Jury indicted plaintiff for sexual abuse in the third degree, New York Penal Code § 130.55, for the same incident. The criminal case remains pending.

Immediately following the encounter with plaintiff, Ms. Montijo was escorted to the NYPD Office of Equal Employment Opportunity ("OEEO"), where she filed a complaint. An Evidence Collection Team ("ECT") of police officers responded and vouchered her stockings and the napkin which she used to wipe the substance from her leg. The ECT officers photographed her shoe which appeared at the time to also contain the substance, and the shoe itself was also later vouchered that day. Later examination by the Office of Chief Medical Examiner ("OCME") found it to be semen. Testimony from OCME was presented at the disciplinary trial.

Plaintiff now claims race discrimination and sues the City and Neldra Zeigler, the Deputy Commissioner of OEEO, under Title VII of the Civil Rights Act of 1964 as amended, 42

U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1983 ("§ 1983"), the New York Executive Law §§ 290 *et seq.* ("SHRL"), and the New York City Administrative Code §§ 8-101 *et seq.* ("CHRL"). Plaintiff specifically claims that he was brought up on departmental charges, found guilty, and terminated, in 2015, because he is Caucasian. He alleges that the husband of Deputy Commissioner Zeigler ("DC Zeigler") is Chief Douglas Zeigler ("Chief Zeigler), who, plaintiff alleges, was replaced, in 2006, as the head of the NYPD's Organized Crime Control Bureau ("OCCB") by Chief Anthony Izzo ("Chief Izzo"). Chief Izzo is also Caucasian and allegedly selected plaintiff to work for him. Plaintiff's theory of discrimination is that because DC Zeigler is African-American, is married to Chief Zeigler, who is also African-American, and because Chief Zeigler was replaced in 2006, by Chief Izzo, that DC Zeigler was motivated by racial animus when she endorsed charges and specifications against plaintiff in 2015. Plaintiff also claims that the NYPD substantially deviated from procedures in its investigation of him, thus compelling an inference of race discrimination. He claims further that he was departmentally prosecuted by NYPD even though it was clear that he was "not guilty." Plaintiff does not contend that there was anyone at NYPD who did anything remotely similar to another NYPD employee as he did and who was then treated differently than he was.

The amended complaint utterly fails to state any plausible claim of race discrimination. It completely fails to allege any facts that might begin to show that DC Zeigler was motivated by racial animus, or that any comments or actions were made or taken by *anyone* at NYPD from which an inference of race discrimination can be drawn. Further, issue preclusion bars plaintiff from contending that he is not guilty of the charges and, again, plaintiff has not alleged that someone similarly guilty of this unconscionable conduct was not the subject of a disciplinary prosecution. Defendants pointed out such deficiencies in a pre-motion letter to

plaintiff and he failed to correct them or withdraw the case. The amended complaint[1] should now be dismissed with prejudice.

## STATEMENT OF FACTS[2]

Plaintiff was hired by the NYPD as a Police Officer in 1986. <u>See</u> Amended Complaint, Docket No. 18, ¶ 8. Chief Zeigler, who is African-American, was replaced as OCCB Chief by Chief Anthony Izzo, who is Caucasian, in 2006. <u>Id.</u> ¶¶ 11-13. Chief Zeigler is married to DC Zeigler, who is also an African-American. <u>Id.</u> ¶ 40. Chief Izzo replaced Chief Zeigler's team at OCCB and "hand-picked" plaintiff, who is Caucasian, to work under his command. <u>Id.</u> ¶ 21. In 2008, Chief Zeigler was ordered out of his car by two Caucasian plain-clothes officers. <u>Id.</u> ¶ 23. DC Zeigler is responsible for the operation of the NYPD EEO Office. <u>Id.</u> ¶ 39.

On January 23, 2015, while walking in the halls of Police Headquarters, at One Police Plaza, Ms. Montijo suddenly felt a "cold" and "creamy substance" on the back of her leg as plaintiff passed her in the hallway. Amended Complaint, ¶¶ 33-36. Ms. Montijo "immediately made a complaint to NYPD EEO." <u>Id.</u> ¶ 38. ECT officers vouchered Ms.

---

[1] The amended complaint was filed on December 20, 2016, and differs from the original complaint by asserting a Title VII claim. In the interest of expeditious resolution of defendants' motion to dismiss, defendants consent *only* to the filing of the amended complaint under Rule 15(a)(2), and do not waive any defense or claim. Additionally, although defendants are entitled to 14 days under Rule 15 to respond to the amended complaint, defendants filed their motion on December 30, 2016, the date set forth in the Case Management Plan to respond to the complaint.

[2] This statement of facts is derived from the allegations in the amended complaint and plaintiff's factual allegations are assumed to be true for purposes of this motion to dismiss only. Paragraphs 75-86 of the amended complaint directly reference plaintiff's departmental trial, which was presided over by ADCT Maldonado. The amended complaint is thus properly supplemented by the Final Order of Dismissal, Disposition of Charges, and Decision of NYPD ADCT Maldonado, which is annexed to the Nacchio Declaration, as Exhibit "A." <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). Additionally, a copy of surveillance footage capturing plaintiff's disgraceful assault of Ms. Montijo will be supplied to the Court at the Court's request.

Montijo's stocking and the napkin which she used to wipe the "creamy" substance from her leg. Id. ¶ 43. ECT officers photographed the substance upon her shoe and later that day went to Ms. Montijo's house to also voucher the shoe. Id. ¶ 44-45. The "NYPD investigators immediately believed the substance was semen and, indeed, ECT vouchered the evidence as 'biological evidence.'" Id. ¶ 46. DC Zeigler issued a "Notice of Discrimination Complaint" to plaintiff that same day. Id. ¶ 41.

One week later, on January 30, 2015, plaintiff testified to NYPD investigators pursuant to the NYPD's Patrol Guide, known as a GO 15 hearing, about Ms. Montijo's allegation. Amended Complaint, ¶ 52. He testified that "did not throw anything at [Ms.] Montijo, but may have inadvertently *sneezed or coughed* while walking by her." Id. ¶ 52 (emphasis added). When subsequently asked, in mid-May, 2015, by the EEO Office to provide a DNA sample, plaintiff refused. Id. ¶ 55. In June, 2015, the NYPD suspended plaintiff without pay when it determined that plaintiff made a "false statement, to wit, the NYPD alleged his statement that he did not throw anything on Montijo was false." Id. ¶ 58.

In July, 2015, after the New York County District Attorney's Office ("DA") obtained a court order, plaintiff provided a DNA sample. Amended Complaint, ¶¶ 59, 61. On July 6, 2015, DC Zeigler formally endorsed charges and specifications against plaintiff for "the Montijo incident and the purported false statement." Id. ¶ 62. In early September, 2015, plaintiff, while on vacation, was told by his "union lawyer . . . *[that] the DNA test matched him and he should consider retiring.*" Id. ¶¶ 67-68 (emphasis added). Plaintiff submitted paperwork to "begin processing his retirement," on September 1, 2015. Id. ¶ 69.

On September 5, 2015, a New York County Grand Jury "indicted plaintiff for a class B misdemeanor[,] for which a warrant was issued." Amended Complaint, ¶ 70. When

plaintiff returned to work from vacation, on September 9, 2015, he was "driven to the Department Advocate's office where his departmental trial was scheduled" and "police officers placed [him] under arrest." Id. ¶¶ 72-73.

In mid-September, 2015, plaintiff's departmental trial was held. Amended Complaint, ¶ 75. Plaintiff alleges "that [although the Medical Examiner] could not confirm semen on the dress, stocking or napkin[,] [the Medical Examiner] found semen . . . on the shoe . . . ." Id. ¶ 78. Also, the "NYPD *could* prove from the science . . . that [plaintiff's] *skin cells* wound up on Montijo." Id. ¶ 81 (emphasis added). Plaintiff claims that "[i]n closing [argument], the NYPD prosecutor stated, in sum and substance, 'I don't know how you got that semen on her, but I know you did it.'" Id. ¶ 85. The Report recommended that plaintiff be found guilty and terminated. See Report, Nacchio Decl. Ex. "A." The Police Commissioner adopted the Report and plaintiff was terminated on September 25, 2015. Id. ¶¶ 86-87.

**ARGUMENT**

**POINT I**

**PLANITIFF'S DISCRIMINATION CLAIMS
FAIL AS A MATTER OF LAW**

To survive a motion to dismiss under Rule 12(b)(6),[3] a plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citation omitted). Further, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation,'" and need not accept as true any conclusory allegations. Id. at 678, 681 (quoting and citing Twombly, 550 U.S. at 554-55). Thus, a plaintiff must plead facts sufficient to demonstrate "more than a sheer possibility that a defendant has acted unlawfully . . . [and] [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Indeed, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" and must, therefore, be dismissed." Id.; Twombly, 550 U.S. at 557, 570 ("[b]ecause the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

In the context of an employment discrimination complaint, this "requirement to plead facts is assessed in light of the presumption that arises in the plaintiff's favor under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), in the first stage of the litigation." Littlejohn v. City of New York, 795 F.3d 297, 310 (2d Cir. 2015). As such, absent direct

---

[3] All references to "Rule" are to the Federal Rules of Civil Procedure.

evidence of discrimination, to survive a motion to dismiss, a complaint of discrimination "must be *plausibly supported by facts alleged* . . . that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Id. at 311 (emphasis added).

Here, the amended complaint does not state a plausible claim of discrimination and relies instead on entirely conclusory *assumptions*. It is utterly implausible that DC Zeigler was motivated by racial animus, in 2015, because her husband was succeeded by a Caucasian colleague nine years earlier, in 2006, and simply because plaintiff worked for that Caucasian successor. It is even more implausible that DC Zeigler directed a conspiracy including the NYPD EEO, the Departmental Advocate Office, the DA, and OCME, and which required the manipulation of OCME's DNA findings. See Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) ("[d]iffuse and expansive allegations" fail to state a § 1983 conspiracy claim). Of course, no facts whatsoever are even alleged that any of this happened and plaintiff is simply weaving libelous theories to avoid accepting responsibility for his own gross misconduct. The amended complaint completely fails to plead a plausible claim of discrimination under Twombly and Iqbal and must be dismissed. Costs and fees should be assessed in this case.

**A.     No Plausible Claim Of Race Discrimination Under Title VII and the SHRL**

Where a plaintiff fails to allege facts sufficient to establish any element of the *prima facie* case, the complaint fails to state a claim. See, e.g., Hedges v. Town of Madison, 456 Fed. Appx. 22, 24 (2d Cir. 2012). To establish a *prima facie* case of discrimination under Title VII, "a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." See Ruiz v.

County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) (Title VII standards applied to SHRL claims.)

Plaintiff here alleges causation on the basis of "(1) DC Zeigler's relationship to Chief Zeigler and Chief Zeigler's history with the NYPD, and specifically, with the OCCB Unit, of which Iscenko was a part, (2) DC Zeigler and the NYPD's deviating from procedure with respect to the investigation of Iscenko, and (3) DC Zeigler's and the NYPD continuing to prosecute Iscenko long after it became clear Iscenko was not guilty of the misconduct of which he was accused." Amended Complaint, ¶ 103.

Where, as here, plaintiff relies upon temporal proximity to establish a *prima facie* case, the temporal proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("[a]ction taken . . . 20 months later suggests, by itself, no causality at all."). "[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line." Cunningham v. Consol. Edison, Inc., 2006 U.S. Dist. LEXIS 22482, at *55-56 (E.D.N.Y. Mar. 28, 2006) (citing, *inter alia*, Hussein v. Hotel Employees & Restaurant Union, Local 6, 108 F. Supp. 2d 360, 367 (S.D.N.Y. 2000) ("the passage of more than two months defeats any retaliatory nexus")); Ponticelli v. Zurich American Ins. Group, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998) (2½ months is "hardly the close proximity of time contemplated … for allowing a plaintiff to establish the 'causal connection' element of retaliation claim."). Here, there is a *nine* year intervening period between plaintiff's departmental prosecution in 2015, and Chief Izzo succeeding Chief Zeigler in 2006. Plaintiff's allegations that Chief Zeigler was ordered out of his car by unknown Caucasian police officers in 2008, 7 years before the incident, also shows a temporal distance which belies causation and

advances his claims no further. Moreover, nothing at all is alleged to illuminate how that alleged incident in 2008, is possibly (let alone, plausibly) related to plaintiff's 2015, termination.

Notably, the amended complaint completely lacks any facts that DC Zeigler <u>ever</u> made any racist comments to anyone, at any time, at any place, let alone comments about plaintiff. Neither are there any facts alleged that anyone else at NYPD ever commented about plaintiff's race, at any time. <u>Cf.</u> <u>Tomassi v. Insignia Fin. Group, Inc.</u>, 478 F.3d 111, 115 (2d Cir. 2007) (a remark evidences discriminatory animus if that remark "evinces a discriminatory state of mind" and on the temporal proximity between the remark and the alleged discriminatory conduct). Here, the only comments any NYPD officials made were about plaintiff throwing his semen onto Ms. Montijo. <u>See</u> Amended Complaint, ¶ 85 ("the NYPD prosecutor stated, in sum and substance, 'I don't know how you got that semen on her, but I know you did it.'").

Additionally, here, the Court should not "accept as true [the] legal conclusion couched as a factual allegation" that the departmental investigation and prosecution of plaintiff deviated from standard procedures to support an inference of race discrimination. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009). This case is clearly distinguishable from the cases in which courts found an inference of pretext and discrimination on the basis of an employer's deviation from a standard operating procedure or policy. <u>See</u> <u>Stern v. Trustees off Columbia Univ.</u>, 131 F.3d 305, 313 (2d Cir. 1997) (discussing inference of pretext arising from University's decision made with "unusual rapidity" to summarily appoint a candidate to position "without following any of its usual [affirmative action] procedures" and the "unprecedented appointment" of an "atypical" search committee); <u>Lifranc v. N.Y. City Dep't of Educ.</u>, No. 07-CV-1109, 2010 U.S. Dist. LEXIS 34009, at *43 (E.D.N.Y. Apr. 6, 2010) (citing and quoting <u>Stern</u>). A violation of a standard operating procedure can indicate racial animus but that is not the case here. Rather,

plaintiff is attempting to re-litigate his disciplinary hearing and the decision by framing frivolous allegations as a race discrimination complaint.

Plaintiff is barred by issue preclusion from asserting that he is not guilty of the charges of throwing semen onto a co-worker at Police Headquarters and lying about it under formal investigative questioning according to GO 15.  See Burkybile v. Bd. Of Educ., 411 F.3d 306, 312 (2nd Cir. 2005).  In Burkybile, the Second Circuit held that "[w]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts."  411 F.3d at 312 (citing University of Tennessee v. Elliot, 478 U.S. 788, 799 (1986)); see generally Report of ADCT Maldonado.  Nacchio Decl., Ex. A.[4]

Collateral estoppel, or issue preclusion, bars relitigation of specific factual or legal issues in a subsequent proceeding "where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."  Grieve v. Tamerin, 269 F.3d 149, 153 (2d Cir. 2001).

Here, plaintiff directly rehashes the defense that he mounted at his departmental trial.  He was represented by counsel and he testified that presence of his DNA on Ms. Montijo

---

[4] A Court may consider a collateral estoppel defense on a Rule 12(b)(6) motion when the court's inquiry is "limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice."  Smith v. City of New York, 130 F. Supp. 3d 819, 827 (S.D.N.Y. 2015), aff'd, No. 15-3059, 2016 U.S. App. LEXIS 19767 (2nd Cir. Nov. 3, 2016); TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014).

was accidentally due to coughing saliva or mucus upon her.  See Nacchio Decl., Ex. A at 11.[5]

This defense was rejected by ADCT Maldonado, who, upon finding him guilty as charged, recommended termination to the Police Commissioner, who adopted and imposed that penalty. See Nacchio Declaration, Ex. A at 1 (Final Order of Dismissal).

Plaintiff cannot now establish a *prima facie* of race discrimination by claiming that he is innocent of the disciplinary charges.  The determination after the hearing precludes him from asserting innocence.  See, e.g., Smith, 130 F. Supp. 3d at 830 ("due to the hearing officers' findings 'that Smith had engaged in misconduct . . . all of which amounted to 'just cause for taking adverse employment action against Smith,' Smith was "precluded from relitigating these central issues, and therefore [could not] establish a causal connection between any protected activity and the adverse employment actions for the purpose of a discrimination claim.") (internal citation omitted).  This is an end to this case.  It need only be added that plaintiff has not, and cannot, allege that any other officer who committed a similar act either was not the subject of disciplinary charges or was not terminated when found guilty.

This result should come as no surprise to plaintiff.  Rather than establish any inference of race discrimination, the facts alleged actually establish that NYPD was motivated at all times by a belief that plaintiff threw his semen upon Ms. Montijo in pursuing him on departmental charges for which he was found guilty and terminated.  That belief was also held by the DA, and a grand jury, which "indicted" plaintiff for a "class B misdemeanor."  Amended Complaint, ¶ 70.  Even plaintiff's union lawyer "told him the DNA test matched him, and that he should consider retiring."  Amended Complaint, ¶ 68.  Plaintiff cannot now credibly contend

---

[5] Report at 7 appears as the 11th page of Nacchio Decl., Ex. "A," which includes the Police Commissioner's finding of guilt and formal termination letter, as well as the Report.

that it is all race discrimination.  In any event, his amended complaint fails to plausibly allege such a claim and it must be dismissed.

**B.     No Plausible Claim of Race Discrimination Under the CHRL**

Discrimination claims under the CHRL must be analyzed separately and construed more liberally than claims under its federal and state counterparts.  <u>Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.</u>, 715 F.3d 102, 109 (2d Cir. 2013).  Still, the Second Circuit holds that "[w]hen applying this standard . . . district courts must be mindful that the NYCHRL is not a general civility code . . . .   [t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive."  <u>Id.</u> at 110 (internal quotation and citation omitted).   "None of the 2005 Restoration Act's amendments to the NYCHRL altered the standard by which a court should determine whether a discriminatory act has occurred . . . ."  <u>Wilson v. N.Y.P. Holdings, Inc.</u>, No. 05-CV-10355, 2009 U.S. Dist. LEXIS 28876, at *87 (S.D.N.Y. Mar. 31, 2009); <u>see</u> <u>also</u> <u>Williams v. New York City Hous. Auth.</u>, 61 A.D.3d 62, 872 N.Y.S.2d 27 (1st Dep't 2009) (citing N.Y.C. Administrative Code § 8-130, as amended by the 2005 Restoration Act).

In the instant case, the CHRL claims fail for the same reasons as his federal and state claims:  he fails to plead facts plausibly giving rise to an inference of discrimination.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. Andy Frain Servs.</u>, 638 Fed. Appx. 68, 71 (2d Cir. 2016) (granting Rule 12(b)(6) motion where "[plaintiff] failed to allege that she was fired or harassed 'because of' her protected characteristics, and she did not plausibly allege any facts that would give rise to such a connection"); <u>Attard v. Board of Education</u>, No. O5-CV-2129, 2010 U.S. Dist. LEXIS 104802 (E.D.N.Y. 2010), <u>aff'd</u>, 451 Fed. App'x 21 (2d Cir. 2011) (analyzing CHRL claims separately, but nonetheless affirming dismissal due to plaintiff's failure to prove her termination was caused by discriminatory animus); <u>Chin v. N.Y.C. Hous. Auth.</u>, 106 A.D.3d 443, 445, 965 N.Y.S.2d 42,

44 (1st Dep't 2013) (where a plaintiff fails to plead facts suggesting that "she has been treated less well than other employees because of her protected status[,] or that discrimination was one of the motivating factors for the defendant's conduct," she fails to plead a cause of action for intentional discrimination under the CHRL), <u>lv. denied</u>, 22 N.Y.3d 861 (2014).

Here, as discussed in Point I, above, plaintiff has not alleged any inference that discriminatory animus motivated defendants' treatment of him.  <u>See</u> <u>Kaur v. New York City Health & Hosps. Corp.</u>, No. 07-CV-6175, 2010 U.S. Dist. LEXIS 15455, *53-55 (S.D.N.Y. Feb. 19, 2010).  Rather, the Report, and the bar of issue preclusion arising from the Report and its official adoption by the Police Commissioner, preclude plaintiff from showing that race discrimination was the cause of his termination.  Thus, the CHRL discrimination claims must be dismissed.

## POINT II

## ALL CLAIMS AGAISNT DEFENDANT
## NELDRA ZEIGLER SHOULD BE DISMISSED

Additionally, to hold an individual liable under the SHRL and the CHRL, plaintiff must demonstrate that that the defendant employee actually "participate[d] in the conduct giving rise to a discrimination claim.'" Feingold v. New York, 366 F.3d 138, 158 (2d Cir. 2004) (citation omitted). The facts alleged against DZ Zeigler here are that she simply operated in her capacity as the Deputy Commissioner in charge of the NYPD EEO Office. The only facts alleged are that she issued notices of discrimination complaints to plaintiff, and that she endorsed charges and specifications against him. Just as he fails to do in support of his claims against the City, plaintiff fails to allege any comments or actions by DC Zeigler to support a claim that she actually "engaged in discriminatory acts." Kato v. Ishihara, 239 F. Supp. 2d 359, 365 (S.D.N.Y. 2002), aff'd, 360 F.3d 106 (2d Cir. 2004). Unfortunately for plaintiff here, the charges and specifications that DC Zeigler preferred against him were because he threw his semen onto Ms. Montijo. No facts are alleged that she charged him because he is white. Thus, all SHRL and CHRL claims against defendant Neldra Zeigler should be dismissed.[6]

---

[6] It should be noted that Plaintiff's Title VII claim is asserted in the fifth cause of action, and does not appear to attempt to assert a Title VII claim against DC Zeigler. To the extent it might be construed otherwise, it is well settled that there is no individual liability under Title VII. See Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995).

## POINT III

## PLAINTIFF FAILS TO STATE A CLAIM
## UNDER 42 U.S.C. § 1983

**A.     No Monell Policy**

Plaintiff's § 1983 claims against both the City and DC Zeigler fail.  First, as to DC Zeigler, individually, "[i]n order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right."  See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004).  Plaintiff, here, fails to state a claim under § 1983 against DC Zeigler individually because she did not cause deprivation of a federal right.  For the same reasons that plaintiff's claims under Title VII fail to allege a plausible claim of discrimination against the City, so too does the § 1983 claim fail against DC Zeigler.  See Points I, II, and II, above; see also Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122-23 (2d Cir. 2004) (applying the McDonnell Douglas framework of Title VII to § 1983 discrimination claim).

The amended complaint also intones the words of municipal liability under Monell v. Department of Social Services, but does not provide any factual allegations supporting such a claim.  It is well-settled that "[a] municipality can be found liable under § 1983 only when the municipality itself causes the constitutional violation."  City of Canton v. Harris, 489 U.S. 378, 385 (1989) (citing Monell v. Department of Social Services, 436 U.S. 658, 691 (1978)).  Municipal liability under § 1983 may not be predicated upon *respondeat superior*.  See City of Canton, 489 U.S. at 385.  Municipality liability under § 1983 may exist only where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ."  Monell v. Dep't of

Soc. Servs., 436 U.S. 658, 694 (1978); see also Villante v. Department of Corrections, 786 F.2d 516, 519 (2d Cir. 1986) (citing Monell v. Department of Soc. Servs., 436 U.S. at 694). But, as here, a single incident alleged in a complaint is insufficient standing alone, to state a § 1983 claim against a municipality. See Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985) ("proof of a single incident . . . is not sufficient . . . under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("[t]he mere assertion …. that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

The amended complaint fails to establish a Monell policy. However, even if it was alleged, it is not facially plausible that the City has a policy of racially discriminating against its Caucasian employees by pursuing a policy of framing them on disciplinary charges for sexual assault and false statements. A plausible claim requires more than wild accusations and patently absurd theories without factual allegations.

Finally, contrary to plaintiff's contentions, as a matter of law, DC Zeigler acting in her capacity as the NYPD Deputy Commissioner for OEEO, does not render her a "policy-maker" for all purposes. See McMillian v. Monroe Co., 520 U.S. 781, 785 (1997) (the inquiry for the Court is "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."); Collins v. Stasiuk, 56 F. Supp. 2d 344, 346 (S.D.N.Y. 1999) ("If plaintiff's argument had merit, then every decision by a high-ranking official to hire or fire would constitute a 'policy' with respect to the affected individual, and every senior decision maker who had ultimate authority over anyone's employment would be

deemed to have 'final authority over policy' within the meaning of the <u>McMillian</u> exception to <u>Monell</u>.  The absurdity of that result -- which would effectively vitiate <u>Monell</u> -- is apparent on its face."); <u>see also</u> <u>Davis v. City of New York</u>, No. 86-CV-6345, 1990 U.S. Dist. LEXIS 14006, *35-36 (S.D.N.Y. Oct. 22, 1990) (citing and applying <u>St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988) to the City's Police Commissioner).  Stated simply, the power to act is not the same as the power to set policy.  <u>See</u> <u>generally</u> <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 124-28 (1988).  Here, like in <u>Collins</u>, and <u>Davis</u>, DC Zeigler's performance of her duties does not render her a "policy-maker."  No facts are alleged other than that "DC Zeigler is ultimately responsible for the NYPD EEO's Office." Amended Complaint, ¶ 39.

Accordingly, plaintiff fails to state a cause of action under § 1983 against either DC Zeigler or the City.

**B.     Qualified Immunity**

DC Ziegler is also entitled to qualified immunity.   Therefore, any § 1983 claim against her should be dismissed on these grounds, too.  Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  A violated right is "clearly established" if "it would be clear to a reasonable officer [in the position of the defendant] that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).   "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  <u>Pearson v. Callahan</u>, 555 U.S. 223, 244 (2009) (internal quotation marks omitted).  Thus, the Supreme Court has held that qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, n. 2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam).

<u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).

Here, the general right to be free of race discrimination may be established but no reasonable government official could possibly know that referring a police officer who threw his semen at a co-worker, while at work at Police Headquarters, for disciplinary prosecution would be a violation of the Constitution's Equal Protection Clause. Rather, Title VII mandated an investigation of the abhorrent allegations against plaintiff – allegations proven to be true. <u>See</u> <u>Malik v. Carrier Corp.</u>, 202 F.3d 97, 105 (2d Cir. 2000) ("an employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to investigate may allow a jury to impose liability on the employer"); <u>cf.</u> <u>Harrington v. County of Suffolk</u>, 607 F.3d 31, 36 (2d Cir. 2010) ("[t]o summarize, we hold that the Suffolk County Code does not create a constitutionally protected property interest in an adequate police investigation because (1) it confers a benefit that is merely discretionary, and (2) it confers a benefit on the public generally, rather than creating an individual entitlement."). DC

Ziegler is entitled to the protection of qualified immunity and, thus, all § 1983 claims against her individually should be dismissed.

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the Court issue an order granting their motion to dismiss, dismissing the complaint in its entirety with prejudice, entering judgment for defendants, and granting defendants costs, fees, and disbursements together with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            December 30, 2016

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Room 2-146
New York, New York 10007
(212) 356-0839
mnacchio@law.nyc.gov


By: _____*/s/ Michael Nacchio*_____
Michael Nacchio
Assistant Corporation Counsel


**ALAN M. SCHLESINGER,**
**MICHAEL NACCHIO,**
   Of Counsel